IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

MICHAEL EDWARD HOOPER,                    )
                                          )
            Plaintiff,                    )
                                          )
vs.                                       )          Case No. CIV-12-758-M
                                          )
JUSTIN JONES, Director, Oklahoma          )
Department of Corrections;  RANDALL       )
G. WORKMAN, Warden, Oklahoma              )
State Penitentiary, and, DOES,            )
UNKNOWN EXECUTIONERS, in their            )
capacities as employees or agents of the  )
Oklahoma Department of Corrections,       )
                                          )
                                          )
            Defendants.                   )


**O R D E R**

Before the Court is Plaintiff's *Corrected Third Amended Motion for Preliminary Injunction* ("Motion")(Dkt. No. 17).[1]   Alleging a deprivation of his Fifth, Eighth, and Fourteenth Amendment rights, Plaintiff seeks a preliminary injunction barring the Defendants from executing him on August 14, 2012, under the current Oklahoma Department of Corrections ("ODOC") protocol for lethal injection executions.  The bases underlying his Amended Complaint (Dkt. No. 15) and proffered in support of his Motion are: (1) that the protocol does not require the State to have a backup dose of pentobarbital in the event the

---

[1] This Motion supercedes Plaintiff's prior filings requesting injunctive relief.  Accordingly, docket numbers 5, 6, 7, and 16 are of no consequence and are hereby dismissed as moot.

first dose fails to render him unconscious; (2) the unknown (to him) shelf life and expiration date of the twenty new doses of pentobarbital recently acquired by the State; (3) the unknown (to him) approved use of the twenty new doses of pentobarbital - whether for human or veterinary use; and (4) whether the State's three-drug protocol complies with the Eighth Amendment in light of other states' adoption of a one-drug protocol for lethal injection.

## Preliminary Injunction Standards

To be entitled to preliminary injunctive relief, the movant must show each of the following: (1) a likelihood of success on the merits; (2) that irreparable harm is likely in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008).

We state again, as we did in Nelson, that a stay of execution is an equitable remedy.  It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts. 541 U.S., at 649-650, 124 S.Ct. 2117. See In re Blodgett, 502 U.S. 236, 239-240, 112 S.Ct. 674, 116 L.Ed.2d 669 (1992) (per curiam); Delo v. Stokes, 495 U.S. 320, 323, 110 S.Ct. 1880, 109 L.Ed.2d 325 (1990) (KENNEDY, J., concurring).  Thus, like other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits. See Barefoot v. Estelle, 463 U.S. 880, 895-896, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). See also Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (per curiam)(preliminary injunction not granted unless the movant, by a clear showing, carries the burden of persuasion).

A court considering a stay must also apply "a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." Nelson, supra, at 650, 124 S.Ct. 2117. See also Gomez v. United

States Dist. Court for Northern Dist. of Cal., 503 U.S. 653, 654, 112 S.Ct.
1652, 118 L.Ed.2d 293 (1992) (per curiam) (noting that the "last-minute nature
of an application" or an applicant's "attempt at manipulation" of the judicial
process may be grounds for denial of a stay).

Hill v. McDonough, 547 U.S. 573, 584 (2006).

Findings of Fact

The Court takes judicial notice of the following previously determined findings of

fact:

1.    The first step of the ODOC's lethal injection protocol mandates the
      intravenous administration to the subject inmate of 5,000 milligrams of
      pentobarbital (2,500 milligrams in each arm). Pavatt v. Jones, 627 F.3d
      1336, 1339 (10th Cir. 2010).

2.    The ODOC's protocol requires the attending physician to "ensure that
      the [inmate] is sufficiently unconscious [as a result of the pentobarbital]
      prior to the administration of the [second drug and paralytic agent,]
      vecuronium bromide . . . ." Id.

3.    The administration of a sufficient dose of pentobarbital will render an
      individual unconscious and the administration of a sufficient dose of
      pentobarbital will be lethal. Id.

4.    Dr. Mark Dershwitz, an anesthesiologist with a Ph.D. in
      pharmacology, "persuasively characterized a 5,000 milligram dose of
      pentobarbital as 'an enormous overdose'" that "would cause a flat line

of the EEG, which is the deepest measurable effect of a central nervous system depressant," and "would be lethal as a result of two physiological responses": the cessation of respiration and the drop in blood pressure "to an unsurvivable level." Id.

5.   Dr. Dershwitz "very persuasively explained" that "pentobarbital is highly likely to cause death in five minutes or within a short time thereafter." Id.

6.   Dr. Dershwitz "credibly testified . . . that the 5,000–milligram dosage will give rise . . . to a *virtually nil likelihood* that the inmate will feel the effects of the subsequently administered vecuronium bromide and potassium chloride." Id. (emphasis added).

7.   Dr. Dershwitz "persuasively responded to Dr. [David] Waisel's testimony that clinicians do not know what dosage of pentobarbital would be required to achieve anesthesia by pointing out that the use of pentobarbital to induce a barbiturate coma, which at least in Dr. Dershwitz's practice is a common use of pentobarbital, takes the patient to a state of unconsciousness beyond a normal clinical level of anesthesia." Id.

8.   Under the standards set forth in Baze v. Rees, 553 U.S. 35, 50-51 (2008), . . . any risk associated with the intravenous injection of 5,000 milligrams of pentobarbital falls far short of the level of risk that must

be shown as a prerequisite to establishing an Eighth Amendment claim. Memorandum and Order, <u>Pavatt v. Jones</u>, CIV-10-141-F, pp. 1-2, Nov. 22, 2010; Transcript of Preliminary Injunction hearing held on Nov. 19, 2010, <u>Pavatt v. Jones</u>, CIV-10-141-F, Dkt. No. 107, p. 156.

9.     The intravenous injection of 5,000 milligrams of pentobarbital will, at a minimum, induce a barbiturate coma, and the far more likely outcome is the suppression of respiratory and central nervous system activity to the point that death will result within a short time after injection of the chemical.  The likelihood of any other outcome of the intravenous injection of 5,000 milligrams of pentobarbital is effectively nil.  The likelihood that the inmate will be sentient for more than a very short time following the intravenous injection of 5,000 milligrams of pentobarbital (and, consequently, that he will experience any pain or suffering as a result of the injection of vecuronium bromide and potassium chloride at the intervals specified in the Oklahoma protocol) is also *effectively nil*. Memorandum and Order, <u>Pavatt v. Jones</u>, CIV-10-141-F, pp. 1-2, Nov. 22, 2010 (emphasis added).

<u>Likelihood of Success on the Merits</u>

In <u>Baze v. Rees</u>, 553 U.S. 35 (2008), the Supreme Court acknowledged "that subjecting individuals to a risk of future harm – not simply actually inflicting pain – can qualify as cruel and unusual punishment." <u>Id.</u> at 49.  The Court emphasized, "[t]o establish

5

that such exposure violates the Eighth Amendment, . . . the conditions presenting the risk must be 'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.'" Id. at 49–50 (quoting Helling v. McKinney, 509 U.S. 25, 33, 34–35 (1993)).

In discussing Baze's application to an inmate's challenge to Oklahoma's lethal injection protocol, the Tenth Circuit approved the District Court's holding that "[s]imply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and unusual" and "[a] stay of execution may not be granted on [such] grounds . . . unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain . . . [and] that the risk is substantial when compared to the known and available alternatives." Pavatt v. Jones, 627 F.3d 1336, 1338-39 (10th Cir. 2010).[2]

Plaintiff has not demonstrated that he is likely to succeed on the merits of his claims or that there are serious questions going to the merits of his claims.  He has not made a clear showing that a substantial risk of severe pain exists compared to known and available alternatives.  As to his claim that Oklahoma's three-drug protocol for lethal injection is unconstitutional in light of other states' adoption of a one-drug protocol, Plaintiff asserts in

---

[2] At the time of the Tenth Circuit's opinion in Pavatt, the Court was aware that Ohio and Washington had replaced their three-drug protocol with a one-drug protocol based on pentobarbital. Id. at 1338, n. 1.

his Reply that he is not challenging Defendants' intention to adhere to their lethal injection

protocol, but rather that an "inadvertent mishap through no one's fault, or a human mistake

in administration" could cause him to receive an injurious dose of pentobarbital that might

either not leave him sufficiently unconscious or might render him severely damaged if the

execution had to be halted.[3]  "Given what our cases have said about the nature of the risk of

harm that is actionable under the Eighth Amendment, a condemned prisoner cannot

successfully challenge a state's method of execution merely by showing a slightly or

marginally safer alternative." Baze, 553 U.S. at 50.

> Instead, the proffered alternatives must effectively address a " substantial risk
> of serious harm." Farmer, supra, at 842, 114 S.Ct. 1970.  To qualify, the
> alternative procedure must be feasible, readily implemented, and in fact
> significantly reduce a substantial risk of severe pain.  If a State refuses to adopt
> such an alternative in the face of these documented advantages, without a
> legitimate penological justification for adhering to its current method of
> execution, then a State's refusal to change its method can be viewed as "cruel
> and unusual" under the Eighth Amendment.

Id. at 52.

Plaintiff has not provided documented advantages to the one-dose protocol.  He has

simply asserted that other states are now using one drug for their lethal injections.

Specifically to him, Plaintiff has not clearly shown Oklahoma's three-drug protocol presents

a risk that is sure or very likely to cause serious illness and needless suffering and give rise

---

[3]  "Some risk of pain is inherent in any method of execution – no matter how humane – if
only from the prospect of error in following the required procedure.  It is clear, then, that the
Constitution does not demand the avoidance of all risk of pain in carrying out executions." Baze,
553 U.S. at 47.

to sufficiently imminent dangers.  The Tenth Circuit has previously determined the District Court did not commit error when it found that any risk associated with the use of pentobarbital in Oklahoma's lethal injection protocol fell short of the level of risk that must be shown as a prerequisite to establish an Eight Amendment claim. Pavatt at 1339; see also Wackerly v. Jones, 398 Fed. Appx. 360, 362-63 (10th Cir. Oct. 12, 2010) (unpublished)(noting that the Court had previously upheld Oklahoma's three-drug protocol as constitutional and finding that the 5,000 miligram dose [of sodium thiopental] had a built in redundancy of the amount of the drug obviating the need for a back-up dose or an alternate procedure).  Plaintiff has not presented any information sufficient for this Court to disregard prior findings and prior precedent and conclude that Plaintiff has made a clear showing of a likelihood of success on the merits of his claim.

This Court further finds that Plaintiff has not demonstrated a likelihood of success on the merits regarding his claim that a "back-up dose" of pentobarbital must be available at the time of his execution.  Plaintiff has merely speculated as to what he believes could be a possible danger of not having an additional dose of pentobarbital.  Contrary to what he claims is possible, it has been determined and accepted that 5,000 milligrams of pentobarbital is "an enormous overdose" that would render an individual unconscious and would result in the cessation of respiration and the drop in blood pressure "to an unsurvivable level." Further, such a dose will give rise to a virtually nil likelihood that the inmate will feel the effects of the subsequently administered vecuronium bromide and potassium chloride.

Based on the foregoing, Plaintiff's claims regarding the expiration date of the twenty

new doses of pentobarbital recently acquired by the State and his claims regarding those doses' approved use are inapplicable to his upcoming execution. Warden Randall Workman has attested through sworn affidavit (Affidavit of Randall G. Workman, July 27, 2012, Exhibit 1 to Defendants' *Response and Objection to Plaintiff's Third Amended Motion for Preliminary Injunction*), and Plaintiff's counsel has accepted (Plaintiff's *Reply to Defendants' Response and Objection to Plaintiff's Third Amended Motion for Preliminary Injunction*, p. 2), that the drugs to be utilized in the execution of Plaintiff were obtained by the ODOC by lawful and proper means, that he knows of no facts to cause him to question the source, method of obtaining, or quality of the drugs to be utilized, and that the drugs to be utilized have been and will be maintained under manufacturer specified environmental conditions to ensure and maintain their integrity. (Workman affidavit, ¶¶ 5-7). Additionally, as the State will be using its previously obtained dose of pentobarbital and will not be utilizing a back-up dose, the twenty new doses obtained by the State will not be used in Plaintiff's execution. Possible questions regarding those doses' approved use are not, therefore, applicable or relevant to the procedure and the protocol pertaining to Plaintiff's execution.

As Plaintiff has failed to clearly show a substantial likelihood of success on the merits, the Court need not address the remaining elements necessary for the issuance of a preliminary injunction. Nova Health Systems v. Edmondson, 460 F.3d 1295, 1299 (10th Cir. 2006). Even if it was necessary, however, Plaintiff's request for a preliminary injunction would fail. Plaintiff can not demonstrate the sufficiently imminent danger of a severe

likelihood of irreparable harm, as Courts have determined his chances are "nil" that he will suffer injury under the State's current protocol.  Nor under his specific set of circumstances can he demonstrate that the balance of equities tips in his favor between his preference of execution under a one-dose protocol and the State's and public's interest in the timely enforcement of Plaintiff's sentence.  The State's and public's interests outweigh any injury Plaintiff might allege.[4]

ACCORDINGLY, Plaintiff's *Corrected Third Amended Motion for Preliminary Injunction* (Dkt. No. 17) is DENIED.  Additionally, based on the foregoing, Plaintiff's *Motion to Set Hearing on Motion for Preliminary Injunction* (Dkt. No. 19) is also DENIED. Further, as stated in footnote 1, supra, Plaintiff's pleadings at Dkt. Nos. 5, 6, 7, and 16 are DISMISSED AS MOOT.

IT IS SO ORDERED this 3rd day of August, 2012.

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

---

[4]  As the Court has determined that a preliminary injunction should not issue, it need not address Defendants' assertion that Petitioner's claims are barred for failure to exhaust his administrative remedies.